IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES B. MORRIS,

       Plaintiff,                       Civil No. 04-877-AA
                                          OPINION AND ORDER

   vs.

CADENCE DESIGN SYSTEMS, INC.,
dba Quickturn, a Cadence Company,

       Defendant.
_____

Michael Zusman
Evans & Zusman, P.C.
5331 SW Macadam, Suite 299
Portland, Oregon 97239

Jeff Brecht
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, Oregon 97205-3089
     Attorneys for plaintiff

Richard Meneghello
Fisher & Phillips LLP
1001 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204

Frederick Brown
Michael Sitzman
Gibson, Dunn & Crutcher LLP
One Montgomery Street, Suite 3100
San Fransico, California 94104
     Attorneys for defendant

AIKEN, Judge:

     Defendant moves for summary judgment pursuant to Fed. R.
Civ. P. 56 alleging that plaintiff does not have standing to
assert his claims.  Defendant's motion is granted and plaintiff's
complaint is dismissed.

<u>STATEMENT OF FACTS</u>

     On June 17, 2004, plaintiff James Morris brought this action
against defendant Cadence Design Systems, Inc. (Cadence) alleging
three causes of action arising out of a terminated contract
between Cadence and Simutech Corporation (Simutech).
Specifically, plaintiff alleges that Cadence breached certain
provisions of a contract that was terminated in 2001, that
Cadence breached the covenant of good faith and fair dealing
arising out of that contract, and that Cadence  misappropriated
some trade secrets belonging to Simutech.  In each of his causes
of action, plaintiff alleges that on November 5, 1999, Cadence
entered into a Product Purchase, Manufacturing and Distribution
Agreement (the "Agreement") with Simutech through which Cadence
was given rights to purchase a hardware prototyping system and to
resell that system, sometimes exclusively, in various markets,
and by which Simutech granted Cadence a manufacturing license for

Page 2 - OPINION AND ORDER

related products.

Plaintiff is not a named party to the Agreement at issue. The express terms of the Agreement prohibit either of the contracting parties (Cadence and Simutech) from assigning or transferring any rights under the Agreement without the express written consent of the other party, subject to some exceptions. There is no dispute that Cadence did not consent to any such assignment or transfer.

<u>STANDARDS</u>

<u>Fed. R. Civ. P. 56 - Summary Judgment</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Substantive law on an issue determines the materiality of a fact.  <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>,

Page 3 - OPINION AND ORDER

477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Electrical, 809 F.2d at 630.

Standing

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1995).  Like subject matter jurisdiction, standing must be considered by federal courts even if the parties fail to raise it.  United States v. Hays, 515 U.S. 737, 742 (1995).  A plaintiff must demonstrate standing separately for each form of relief sought.  Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 184 (2000).  The burden is on the plaintiff who seeks the exercise of jurisdiction in his or her favor to "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  Hays, 515 U.S. at 743.

///

Page 4 - OPINION AND ORDER

<u>DISCUSSION</u>

Cadence first asserts that plaintiff lacks standing to enforce the Agreement because plaintiff failed to obtain Cadence's consent to the assignment of the Simutech/Cadence Agreement.  Plaintiff does not dispute that he did not obtain Cadence's consent to the assignment.

Cadence next asserts that plaintiff lacks standing because he failed to acquire "all, or a substantial portion of [Simutech's] assets, product lines or businesses," and thus does not fall within the "exception" found in the Agreement which allows transfer without obtaining the other party's consent.

The Assignment clause, found in the Cadence/Simutech Agreement and referenced by both parties, states as follows:

> Neither this Agreement nor any rights hereunder, in whole or in part, shall be assignable . . . However, the foregoing notwithstanding, an assignment by either party in connection with the transfer of all, or a substantial portion of its assets, product lines or businesses, or by reason of acquisition, merger, consolidation or operation of law shall not require the other party's consent.  Subject to the above, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

Cadence/Simutech Agreement, § 15.4

This court initially granted defendant's motion to dismiss plaintiff's complaint due to lack of standing finding that:

> [e]ven reading the complaint in the light most favorable to the plaintiff, it is unclear whether the alleged "agreement" between Ravesim and plaintiff which entitles plaintiff to 'pursue all claims and

Page 5 - OPINION AND ORDER

> causes of action against defendant' qualifies under
> the Cadence/Simutech Agreement exception.  Specifically,
> it is unclear whether plaintiff's alleged "agreement"
> with Ravesim was actually a transfer of all, or a
> substantial portion of Ravesim's assets, or was a
> acquisition, merger, consolidation or operation of
> law," and therefore falls within the exception
> which allows transfer without consent.

Opinion and Order, Nov. 2, 2004, p. 7.

The court then granted plaintiff leave to file an amended complaint to allow plaintiff an opportunity to satisfy the standing requirement.  On November 23, 2004, plaintiff filed an amended complaint alleging in part:

> At some point, RaveSim became the owner of all of
> Simutech's assets, including all claims and causes of
> action Simutech had against defendant.  Thereafter,
> Ravesim and plaintiff entered into an agreement that,
> expressly or by operation of law, entitles plaintiff
> to pursue all claims and causes of action against
> defendant which either Simutech or Ravesim previously
> had or now has, with the right to assert and recover
> damages for such claims against defendant for the
> benefit of Ravesim and plaintiff . . . . At the time
> of the RaveSim/Plaintiff Agreement, and at all times
> thereafter, there did not exist any Simutech physical
> assets.  Instead, the claims assigned or otherwise
> transferred under the Release constituted, and
> continue to constitute, a substantial portion of the
> Simutech assets.

Amended Complaint, ¶ 5.

Upon reviewing plaintiff's allegations liberally and in the light most favorable to plaintiff, the court found plaintiff's allegations in his First Amended Complaint sufficient to withstand a second Fed. R. Civ. P. 12(b)(6) motion filed by the defendant.  The parties then stipulated, and the court ordered,

Page 6 - OPINION AND ORDER

that discovery proceed only on the standing issue.  Discovery on the merits was stayed pending this court's determination of standing.  Upon completion of discovery on the standing issue, defendant filed the motion at bar.

Discovery revealed the following additional facts.  In 2001, Simutech obtained a loan from Kirnaf Ltd., and as part of that loan agreement, Simutech pledged to Kirnaf a security interest in and a lien on all of Simutech's assets.  In the Fall 2001, Kirnaf demanded payment, however, Simutech was unable to pay back the loan.  Kirnaf then commenced foreclosure proceedings against Simutech and ultimately purchased all of Simutech's assets at a public auction.  On November 13, 2001, Kirnaf contributed the Simutech assets it purchased, along with $750,000 cash, to RaveSim in exchange for preferred stock, and RaveSim commenced operations.

At the time that Simutech was sold to Kirnaf, Simutech had several significant assets, including hardware and patents, which were valued at over $2.1 million.  All of these assets were transferred to RaveSim by Kirnaf.  In addition to the Simutech assets, Kirnaf contributed $750,000 cash to RaveSim, and RaveSim acquired other assets in connection with the commencement of its operations.  Although no additional valuation was made of the RaveSim assets, RaveSim's corporate designee and former CFO detailed RaveSim assets in excess of $3 million.

Page 7 - OPINION AND ORDER

In November 2001, plaintiff sued RaveSim in Oregon state court in Multnomah County, Oregon.  After a year of litigation, plaintiff and RaveSim resolved the lawsuit and executed a Settlement Agreement.  Plaintiff testified in his deposition that his Settlement Agreement with RaveSim acts as the sole basis for his claim that he has standing to sue Cadence on behalf of RaveSim/Kirnaf.

The relevant paragraphs of the Settlement Agreement are as follows:

> C.  In consideration of Morris' agreement to dismiss with prejudice his Amended Complaint as to RaveSim/ Kirnaf and Saud Ben Khudair, RaveSim agrees to assess and review whether or not a viable claim exists against Cadence Design Systems ("Cadence").
>
> D.  RaveSim/Kirnaf agrees to review and assess information provided by Morris regarding a claim against Cadence and to render an opinion regarding whether or not a viable claim against Cadence exists based upon the information provided to RaveSim/Kirnaf by Morris[.]
>
> I.  If RaveSim determines that the information provided by Morris is insufficient for RaveSim to pursue a claim against Cadence, RaveSim agrees to provide the information to an independent, neutral third-party mutually selected by the Settling Parties and located in Portland, Oregon, to provide an independent assessment of the claim against Cadence.  As assessment of the claim by such neutral third-party will be made within 30 days of RaveSim's decision not to pursue a claim against Cadence.  If the independent third-party assesses the information provided by Morris and determines that a viable claim exists against Cadence, RaveSim may re-evaluate whether to purse its claim against Cadence and should RaveSim adhere to its initial decision not to pursue a claim against Cadence, RaveSim will assign its right to pursue such a claim against Cadence to Morris and Morris will have the right to pursue the claim and recover any damages from Cadence.

Murphy Depo., Ex. 17, p. 4-5 (attached to Declaration of Michael
Sitzman).

The Settlement Agreement quoted above specifies that RaveSim
would be obligated to assign a claim to plaintiff against Cadence
if the following events took place: (1) plaintiff provided
information on the claims he believed existed against Cadence to
RaveSim; (2) RaveSim determined that it would not pursue a claim
against Cadence; (3) the parties obtained an independent
assessment from a neutral third party determining that a valid
claim existed; and (4) RaveSim nevertheless, declined to bring
suit against Cadence.  The Settlement Agreement mandates that
upon the occurrence of these four events, RaveSim would then
assign a claim against Cadence to plaintiff.

Plaintiff did provide information to RaveSim that he
believed supported a claim against Cadence.  RaveSim reviewed
that information and nevertheless declined to pursue such a
claim.  I find no evidence that conditions (3) and (4) as
specified in the Settlement Agreement ever occurred.  Following
RaveSim's initial assessment as to whether to bring a claim
against Cadence, there is no evidence that the parties ever
pursued an independent, third-party assessment, therefore,
RaveSim's final option to bring the claim did not mature.
Consequently, RaveSim never assigned a claim to plaintiff against
Cadence.  Plaintiff testified in his deposition that he never

Page 9 - OPINION AND ORDER

worked with RaveSim, Kirnaf or its counsel to select a mutually
accepted third party to review his claim as required by the
Settlement Agreement.  Morris Depo., 89:8-12.  Further, plaintiff
concedes that he did not receive or obtain an assignment from
RaveSim following the Settlement Agreement.  Morris Depo., 64:22-
65:1.

Plaintiff, however, argues that a formal assignment was not
specified under the Settlement Agreement.  Plaintiff relies on a
February 2003, letter from RaveSim and Kirnaf's attorney
notifying plaintiff that: "we write to notify you that after
thorough and careful consideration, RaveSim and Kirnaf each have
decided not to file a legal action against Cadence . . . . As set
forth in the RaveSim/Morris [Settlement] Agreement, if you desire
to commence an action in your own name, please have your attorney
contact us regarding assignment, indemnity in favor of RaveSim
and Kirnaf and other related issues."  Plaintiff points out that
the attorney did not inform plaintiff that RaveSim or Kirnaf had
consulted, or intended to consult, an experienced third-party
regarding its decision.  Plaintiff argues that if Ravesim wished
to have a third-party evaluate the claim against Cadence, it was
required to promptly provide information to a third-party, so
that the third-party could "provide an independent assessment"
"within 30 days of RaveSim's decision not to pursue a claim
against Cadence."  RaveSim/Morris Settlement Agreement, p. 2,

¶ 1.  Plaintiff argues that RaveSim's failure to seek a third-party assessment effectively assigned the Cadence claim to plaintiff "by operation of law."

Defendant disagrees and relies on RaveSim and Kirnaf's attorney's letter to plaintiff's attorney stating that they did not intend to file suit against Cadence and specifically directing plaintiff's attorney to contact their counsel regarding "assignment, indemnity in favor of Ravesim and Kirnaf and other related issues."

Several months later, in February 2004, Morris's attorney contacted RaveSim/Kirnaf's counsel stating that, "it is now urgent that the assignment be completed," and attached a form of assignment.  A few days later, RaveSim responded:

> Pursuant to the terms of the Settlement Agreement, Morris is not entitled to an assignment of any potential claim that RaveSim may have against [Cadence], absent a finding by a third party that a viable claim exists . . . . Although RaveSim and Kirnaf do not intend to commence an action against Cadence regardless of the conclusion reached following an independent assessment of the claims, RaveSim is not willing to assign worthless claims to Morris.  As you know, it was after thorough and careful consideration that Ravesim and Kirnaf decided not to file a legal action against Cadence.

Hurley Decl., Ex. C (footnotes omitted, emphasis in original).

Finally, in August 2004, two months after plaintiff filed his initial Complaint, plaintiff's counsel wrote to RaveSim's counsel again requesting assignment and informing RaveSim/Kirnaf that an action against Cadence was filed.  Counsel for RaveSim

responded:

> Pursuant to the terms of the Settlement Agreement, Morris was not entitled to an assignment of any potential claim that RaveSim may have had against [Cadence] absent a finding by a third party that a viable claim existed. The primary purpose of the requirement that a third party assess the validity of potential claims was to ensure that any claim that Ravesim may have assigned to Morris had merit.
>
> As we informed Morris's [previous counsel], it was after thorough and careful consideration that Ravesim and Kirnaf decided <u>not</u> to file a legal action against Cadence, and Ravesim was unwilling to assign any claim absent some type of third party assessment that a claim existed. In addition, as we informed [plaintiff's previous counsel], prior to executing any assignment of claims, the terms of the Settlement Agreement required that Morris execute indemnity and security agreements in favor of RaveSim and Kirnaf . . . . We never received any further correspondence from [plaintiff's previous counsel] and remain unwilling in these circumstances to assign any possible claim to your client.

Hurley Decl., Ex. E.

Three months later, Morris's counsel replied, "[w]e believe your view on assignment is factually and legally incorrect. Moreover, it would be improper for us to advance a position that is directly contrary to our client's interests." <u>Id.</u>, Ex. F. RaveSim's counsel responded reiterating that no assignment to Morris was ever made. <u>Id.</u>, Ex. G.

Plaintiff argues that the RaveSim/Morris Settlement Agreement did not require plaintiff to obtain a formal, written assignment of RaveSim's claim against Cadence in order for plaintiff to file a claim against Cadence. Plaintiff asserts that the Settlement Agreement fails to require any written or

Page 12 - OPINION AND ORDER

"executed," assignment to plaintiff of the claim against Cadence.

Instead, the Settlement Agreement states that "RaveSim will

assign its right to pursue such a claim against Cadence to Morris

and Morris will have the right to pursue the claim and recover

any damages from Cadence."  RaveSim/Morris Settlement Agreement,

p. 2, ¶ 1.  In sum plaintiff argues that because RaveSim declined

to sue Cadence and declined to seek a third-party assessment,

with those actions, RaveSim "assigned" the Cadence claim to

plaintiff.

I disagree and rely on the Oregon court's reasoning and

holding in Springfield Int'l Restaurant v. Sharley, 44 Or. App.

133, 605 P.2d 1188 (1980), where the court held that "[a]

contract to assign a right in the future is not an assignment."

Id. at 140. This is precisely the situation at bar.  The

Settlement Agreement acted as a contract to assign to plaintiff a

right in the future if certain conditions were satisfied.

Without evidence of those conditions being satisfied, I find no

assignment as a matter of right, or law.

Further, I reject plaintiff's argument that assignment

occurred to him "as a matter of law" because contract law

requires that conditions precedent be met before a party is

entitled to performance of the contract.  Porter v. Meier

Chevrolet-Buick, Inc., 254 Or. 482, 484, 461 P.2d 527 (1969)

("Until the condition was met the contract did not come into

Page 13 - OPINION AND ORDER

operative existence")(internal citations omitted).  The
Settlement Agreement clearly and unambiguously states that in the
event the conditions precedent are met, "RaveSim will assign its
right to pursue such a claim against Cadence to Morris and Morris
will have the right to pursue the claim and recover any damages
from Cadence."  Murphy Depo., Ex. 17, ¶¶ I, O (emphasis added).
Therefore, even if RaveSim waived every condition precedent, that
only entitled plaintiff to an assignment from RaveSim, which
RaveSim did not make and which plaintiff admits was not made.
Morris Interrogatory Resp. No. 7 (Sitzman Decl., Ex. E at 5);
Morris Depo. 27:5-20.

     Moreover, the Ninth Circuit has held that "the assignees
must come forward with evidence that the assignor meant to assign
rights and obligations under the contracts."  Britton v. Co-Op
Banking Group, 4 F.3d 742, 746 (9th Cir. 1993).  Again, I find no
evidence that RaveSim intended to assign its claim against
Cadence to the plaintiff without satisfying the conditions
precedent as set forth in the Settlement Agreement.

     Finally, regarding plaintiff's argument that RaveSim's
failure to procure a third party review of the claim within the
thirty-day deadline "waived" the condition precedent and acted to
obviate the requirement that RaveSim assign its claims to
plaintiff is not supported by law.  Plaintiff relies on an ERISA
case holding that where a claims administrator has not issued a

formal benefits determination within 45 days after receiving a
claim, the relevant ERISA statute deems the claim denied, the
administrative remedies exhausted, and allows the employee
claimant to seek judicial review of the claim.  <u>Stefansson v. The
Equitable Life Ins. Co.</u>, 2005 WL 2277486 (M.D. Ga.2005)(internal
citations omitted).  I find no analogous statutory scheme
applicable to the case at bar, and therefore find plaintiff's
reliance on <u>Stefansson</u> misplaced.  I similarly reject plaintiff's
arguments concerning an "equitable" or "constructive trust,"
finding no basis in law for these arguments.

Plaintiff next relies on the exception to the
Cadence/Simutech Agreement's general statement of
nonassignability as follows: no consent to assignment of any
contract right is required where the assignment is "in connection
with the transfer of all, or a substantial portion of [the
assignor's] assets."  Cadence/Simutech Agreement attached as Ex.
A to First Amended Complaint.

Plaintiff asserts in his amended complaint that: (1) "at
some point," Ravesim became the owner of all Simutech's assets,
including all claims and causes of action which Simutech had
against [Cadence];" and (2) because there did not exist any
physical assets belonging to Simutech, the claims assigned or
otherwise transferred under the Release constituted a
"substantial portion of Simutech assets."  Plaintiff's Amended

Page 15 - OPINION AND ORDER

Complaint, ¶ 5;  Plaintiff asserts that based on the plain meaning of the Assignment clause, the assignment of the claim against Cadence to the plaintiff falls squarely within the "exceptions" quoted above.  Those exceptions permit the transfer of either "all" or a "substantial portion" of one party's assets, "or by reason of acquisitions, merger, consolidation, or operation of law," without requiring the other party's consent.

      The Agreement further states that it shall be binding upon and "inure to the benefit of the successors and assigns" of the parties to the Agreement. Plaintiff asserts that the transfer of the right to sue Cadence that passed from Simutech to Kirnaf to RaveSim to plaintiff falls under one or more of the listed exceptions in the Agreement, which would permit plaintiff's third-party enforcement of the Agreement, and provide plaintiff with standing to bring the suit at bar.

      For purposes of this motion, defendant does not dispute that there was a valid transfer of assets between Simutech and Ravesim.  I find no evidence, however, that RaveSim ever transferred any assets to plaintiff in connection with the purported assignment.  In fact, RaveSim's former CFO, Terry Murphy, testified that RaveSim never transferred any assets to plaintiff.  Murphy Depo., 81:19-25.  Therefore, any assignment by RaveSim of a right or claim against Cadence was not "in connection with the transfer or all or a substantial portion of

[RaveSim's] assets."  First Amended Complaint, Ex. A, ¶ 15.4.
Plaintiff concedes that other than the alleged rights under the
Cadence/Simutech Agreement, plaintiff received nothing.  Morris
Depo. 86:3-11.  Terry Murphy testified that at the time of the
Settlement Agreement, RaveSim had in excess of $2.5 million in
assets.  Murphy Depo., at 51:4-53:4, 59:4-60:24; 81:22-25,
91:18-92:7.  None of these assets were ever transferred to
plaintiff.  Therefore, I find no evidence that plaintiff's
alleged assignment occurred "in connection with the transfer of
all or a substantial portion" of RaveSim's assets.

                          CONCLUSION

     Defendant's summary judgment motion (doc. 50) is granted and
plaintiff's complaint is dismissed.  Defendant's evidentiary
objections in support of motion for summary judgment (doc. 72)
are denied.  Finally, defendant's request for oral argument is
denied as unnecessary.
IT IS SO ORDERED.

          Dated this  6   day of June 2006.




                         /s/ Ann Aiken
                    Ann Aiken
               United States District Judge




Page 17 - OPINION AND ORDER